739 A.2d 1023

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Andre THOMPSON, a/k/a Anthony Rogers, Appellant.**

Supreme Court of Pennsylvania.

Argued April 26, 1999.

Decided Sept. 29, 1999.

Reargument Denied Dec. 2, 1999.

234

Bruce Wolf, Philadelphia, for Andre Thompson.

Catherine Marshall, Philadelphia, for Commonwealth.

Anthony V. Pomerang, Robert A. Graci, Harrisburg, for Office of the Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CASTILLE, Justice.

This is a direct appeal from a sentence of death imposed by the Court of Common Pleas of Philadelphia County.[1] Following a jury trial on November 8, 1993, appellant was convicted of first degree murder,[2] criminal conspiracy,[3] possessing an instrument of crime,[4] aggravated assault,[5] recklessly endangering another person[6] and escape[7] in connection with the murder of Donovan "George" Aitken. Following the sentencing phase, the jury determined that the four aggravating circumstances it found outweighed the one mitigating circumstance independently found by one juror and returned a sentence of death.[8] On March 18, 1996, following the appoint-

1. 42 Pa.C.S. § 9711(h)(1).
2. 18 Pa.C.S. § 2502(a).
3. 18 Pa.C.S. § 903.
4. 18 Pa.C.S. § 907.
5. 18 Pa.C.S. § 2702.
6. 18 Pa.C.S. § 2705.
7. 18 Pa.C.S. § 5121.
8. The four aggravating circumstances found by the jury were: (1) that appellant knowingly created a grave risk of danger to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7); (2) that appellant has a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9); (3) that

ment of new counsel and post-verdict motions, the trial court imposed the jury's sentence of death for the first degree murder conviction and additionally sentenced appellant to serve five to ten years for criminal conspiracy, five to ten years for aggravated assault, two and one-half to five years for possessing an instrument of crime, and one to two years for attempted escape, each sentence running consecutively to the death sentence.[9] For the reasons below, we affirm the conviction and the judgment of sentence.

Although appellant only challenges whether there was sufficient evidence to support the convictions for aggravated assault and recklessly endangering another person, under *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), this Court performs an independent review of the evidence in all cases of first degree murder where the sentence of death has been imposed to ensure that it is sufficient to support the first-degree murder conviction, regardless of whether appellant seeks such review. *Commonwealth v. Cox*, 556 Pa. 368, 728 A.2d 923, 929 (1999). When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the evidence was sufficient to enable the finder of fact to find that all of the elements of the offenses were established beyond a reasonable doubt. *Commonwealth v. Hall*, 549 Pa. 269, 280, 701 A.2d 190, 195 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). After a review of the record, we find that the evidence is sufficient to support the convictions for first degree murder, criminal conspiracy, pos-

appellant was paid by another person for killing the victim, 42 Pa.C.S. § 9711(d)(2); and (4) that appellant committed the murder to promote his drug activities, 42 Pa.C.S. § 9711(d)(14). The one mitigating circumstance found by one of the jurors was any other evidence of mitigation concerning the character and record of appellant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8).

9. Appellant received no sentence for his conviction of recklessly endangering another person since it is a lesser included offense of aggravated assault.

sessing an instrument of crime, aggravated assault, recklessly endangering another person and escape.

The evidence at trial established that on February 1, 1992, Francisco Forbes drove to the victim Aitken's apartment, intending to drive the victim to work. Forbes performed several services for the victim, including helping to collect revenues from the victim's marijuana business. Upon Forbes exiting his car, appellant approached Forbes and asked for a cigarette. After indicating that he did not smoke, Forbes proceeded to cross the street and enter the victim's apartment building. Approximately fifteen minutes later, Forbes, the victim and the victim's girlfriend exited the apartment building. As Forbes began crossing the street towards his car, he observed appellant pull out a handgun and begin firing. Forbes initially feared he had been shot but, after realizing he was mistaken, ducked and ran toward the apartment building hoping to escape. The victim was unable to escape and fell to the ground after being shot. Forbes then watched as appellant approached the victim and shot him several more times while on the ground. Forensic evidence established that the gunshot wounds caused the victim's death.

In November of 1992, appellant admitted to Norman Price that he was responsible for murdering the victim. He further told Price that Richard Martin, the brother of the victim's girlfriend, had paid him to commit the murder because Martin wanted to take over the victim's drug business. Moreover, as part of the agreement, following the murder appellant would be allowed to run one of the victim's variety stores from which he had sold marijuana.

On December 22, 1992, two police detectives arrested appellant at the variety store. After arriving at the police station, the police conducted a thorough pat-down search of appellant and found a bag containing thirty-three vials of crack cocaine. After reading appellant his *Miranda* warnings,[10] the police questioned him. Although appellant initially denied any involvement in the murder, he eventually admitted his culpabili-

10. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ty. At first, he refused to sign a written confession acknowledging his statement but, after speaking with his mother, appellant agreed to sign the statement admitting that he shot the victim three to four times in exchange for marijuana from Martin, which appellant subsequently sold for $1,100. The next day, while awaiting preliminary arraignment in a holding cell with other prisoners, appellant did not respond when his name was called. A police officer then checked the armbands of all the prisoners awaiting arraignment and discovered that one prisoner, later identified as Ty Fuller, did not have an armband. The police officer then discovered that appellant, who was still in the cell, had taken Fuller's armband and replaced his own with it. Fuller was facing only theft charges and was due to be released from jail following his arraignment. After being confronted by the officer, appellant took his own armband out of his pocket.[11]

■ In order to sustain a conviction for first degree murder, the Commonwealth must prove (1) that the defendant acted with a specific intent to kill; (2) that a human being was unlawfully killed; (3) that the person accused did the killing; and (4) that the killing was done with deliberation. 18 Pa.C.S. § 2502(d); *Commonwealth v. Bronshtein*, 547 Pa. 460, 472, 691 A.2d 907, 912 (1997), *cert. denied*, 522 U.S. 936, 118 S.Ct. 346, 139 L.Ed.2d 269 (1997). Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another. *Hall, supra* at 282, 701 A.2d at 196. The use of a deadly weapon upon a vital part of the victim's body is sufficient to prove the specific intent required for a conviction of first degree murder. *Id.* Finally, it has long been the view in this Commonwealth that an attempt to escape police custody shows a consciousness of guilt. *Commonwealth v. Vasbinder*, 292 Pa. 506, 508, 141 A. 476, 477 (1928); *Commonwealth v. Tedford*, 523 Pa. 305, 331–32, 567 A.2d 610, 622–23 (1989). Here, the eyewitness testimony, appellant's attempted escape and appellant's admission of guilt

11. At trial, both appellant and his trial counsel admitted that appellant had attempted to escape from the holding cell.

to the police and Norman Price established sufficient evidence to support the first degree murder conviction.[12]

Appellant claims that the evidence was insufficient to support the convictions for aggravated assault and recklessly endangering another person, claiming that the Commonwealth failed to establish that Forbes was in danger of death or serious bodily injury.[13] A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "[F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Commonwealth v. O'Hanlon*, 539 Pa. 478, 482, 653 A.2d 616, 618 (1995). Here, the evidence established that the first several shots fired by appellant narrowly missed hitting Forbes. Forbes testified that initially he believed he had been struck by one of appellant's bullets and was then forced to run and "zig zag" in order to avoid being hit by the bullets. We find that this evidence was sufficient to support the aggravated assault and recklessly endangering another person convictions.

Finally, appellant claims that the evidence was insufficient during the penalty phase to support the jury's aggravating circumstance finding that "in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the

12. At trial, appellant introduced evidence of an alibi. Michelle Eckton, the mother of one of appellant's children, testified that she was with appellant at the time of the murder and that she was assisting appellant in the performance of his job renovating a house. Appellant testified at trial that he was employed by Guardian Services Maintenance Company and was working with Eckton on the day the victim was killed. On rebuttal, the Commonwealth introduced evidence that established that appellant had not worked for Guardian Services since 1991.

13. Reckless endangerment is a lesser included offense of aggravated assault and where the evidence is sufficient to support a claim of aggravated assault it is also sufficient to support a claim of recklessly endangering another person.

offense." 42 Pa.C.S. § 9711(d)(7). When considering whether the evidence supports a finding that the aggravator at subsection (d)(7) is applicable, "we review the actor's conduct to determine whether his conduct brought others into a life-threatening situation." *Commonwealth v. Mitchell*, 528 Pa. 546, 554, 599 A.2d 624, 628 (1991). Here, there was substantial evidence for the jury to conclude that appellant's conduct brought Forbes into a life-threatening situation by narrowly missing Forbes with several of his shots. Hence, we find that this claim lacks merit.

■ Appellant next claims that the trial court erred twice in instructing the jury during the guilt phase regarding the doctrine of transferred intent.[14] During its charge to the jury, the trial court stated as follows:

There is in the law a doctrine of transferred intent which, similarly stated, is this, if you have a state of mind or an intent to injure an intended victim and instead of injuring the intended victim, remember, the intended victim is not injured, but you actually injure somebody else, the state of mind is that you wanted to kill "A" and you aimed and shot somebody else or if you intended to attempt to inflict serious bodily harm upon "A," the intended victim, but somebody else is the actual victim, the state of mind with respect to the intended victim is that as the state of mind to inflict or attempt to inflict injuries upon the actual victim who is injured or attempted to be injured. So, the intent to harm the intended victim is to be transferred to the actual victim. That's the doctrine of transferred intent, which can apply in a given set of circumstances. It can be applicable here.[15]

14. This claim would normally be waived since appellant did not object to the charge before the jury's deliberations. *See* Pa.R.Crim.P. 1119; *Commonwealth v. Edmondson*, 553 Pa. 160, 718 A.2d 751 (1998). However, under our relaxed waiver standard employed in capital cases on direct appeal, we will consider the merits of this claim. *Commonwealth v. LaCava*, 542 Pa. 160, 175, n. 8, 666 A.2d 221, 228 n. 8 (1995).

15. The trial court, in response to a question posed by the jury regarding aggravated assault, reviewed and explained the various elements of the crime, stating, in relevant part:

■ Appellant claims that the transferred intent instruction was not warranted because Forbes was never actually shot and because Forbes was not an intended victim. As noted above, however, in order to sustain the conviction for aggravated assault, the Commonwealth only needed to establish that appellant attempted to cause serious bodily injury. *O'Hanlon, supra.* There is no requirement that the victim actually be injured. Moreover, appellant's argument that the transferred intent instruction was not warranted because he did not intend to shoot Forbes ignores the essence of the transferred intent doctrine, that is, the person who ultimately is the victim *not be* the original intended victim.[16] "The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." *Commonwealth v. Gibbs*, 533 Pa. 539, 547, 626 A.2d 133, 138 (1993). The evidence here demonstrated that appellant shot in the direction of Forbes even though he may have only intended to shoot Aitken. This evidence was sufficient to warrant the transferred intent instruction. Where the evidence is sufficient to support an instruction, a new trial is not warranted. Hence, this claim warrants no relief.

■ Appellant next claims that trial counsel was ineffective for failing to object when the trial court instructed the jury during the testimony of Norman Price that it could only consider Price's open pending criminal cases to determine whether he was in custody when he spoke with the police.[17]

... [T]he defendant's conduct disregarded what was intentional, in other words, that it was his conscious objective or purpose to cause serious bodily injury, and under the doctrine of transferred intent, you have to have the intent to kill or to cause serious bodily injury to one person and it was by accident directed to the actual victim other than the intended victim or both victims, you have the doctrine of transferred intent.

16. The jury could also have concluded that Forbes was also an intended victim of appellant as he initially believed he had been shot and was a potential witness if appellant was later apprehended.

17. Appellant also raises a separate claim of trial court error for giving this instruction. However, because trial counsel did not object, that

The law presumes that trial counsel was not ineffective and appellant bears the burden of proving otherwise. *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981). In order to sustain a claim of ineffective assistance of counsel, appellant must establish (1) that the underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis; and (3) that counsel's ineffectiveness worked to petitioner's prejudice. *Hall, supra* at 290, 701 A.2d at 200.

As noted above, Price testified that appellant admitted to him that he killed the victim and that he was paid for the killing. It was established at trial that Price had an extensive criminal history as well as three unresolved open criminal matters. After appellant's counsel elicited testimony regarding Price's past criminal activities and open cases, the trial court gave the following instruction to the jury:

> Now, the 11 theft cases, the forgery case and the robbery case were offered for impeachment purposes. I will charge you that felonies involving the character traits of honesty and truthfulness can be used to impeach the credibility of the witness, the number of crimes, the nature of the cases and the age of the crime, to determine all, part or none of his testimony from the witness box. Don't confuse the open cases and add them to what were properly admitted evidence of crimen falsi convictions. You do not make the 13 cases, 16 cases now.

> The questions as to the open cases were only asked relevant to the issue of whether or not he was held in custody at the time he went to homicide to talk to the detectives and the reason or reasons for his being held in custody other than a drug arrest. That's the only relevance of what he's questioning him about now.

Appellant claims the instruction regarding the open crimes was erroneous since the jury could also consider whether the open crimes created a bias within Price to testify for the prosecution as a means of receiving favorable treatment.[18]

claim is waived. In any event, the merits of the claim are addressed in our discussion of appellant's claim of ineffective assistance of counsel.

**18.** Appellant also argues that the erroneous instruction deprived him of his constitutional right to confront Price. This claim is unfounded

 At trial, Price testified that he did not receive any promises or actual benefits from the Commonwealth for agreeing to testify. Appellant fails to demonstrate that this statement was erroneous or that Price has received favorable treatment in exchange for his testimony. Although Price had not reached an agreement with the Commonwealth in exchange for his testimony, this Court had recognized that a witness may be motivated to aid in the Commonwealth's case in hope of receiving favorable treatment in the future. In *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986), this Court held that it was error for the trial court to prohibit the defendant from cross-examining a key witness for the prosecution about pending criminal matters and whether he had any expectation of leniency in exchange for his cooperation. In *Evans*, this Court stated:

[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises ... the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if the possibility exists, the jury should know about it.

*Id.* at 224–25, 512 A.2d at 631–32. Therefore, we agree with appellant that the trial court's instruction was problematic. The jury should have been instructed that it could also use the pending criminal charges to determine whether Price had a potential bias in aiding the Commonwealth in establishing their case against appellant.

However, in order for this claim to afford appellant relief, appellant must establish that ineffectiveness worked to petitioner's prejudice. This Court has repeatedly held in reviewing a jury instruction for prejudicial or reversible error, "[j]ury instructions must be taken as a whole and an error

since appellant's cross-examination of Price was not limited; rather, the issue went to whether the court improperly infringed on the ability of the jury to accurately weigh the testimony.

244

cannot be predicated on an isolated excerpt." *Commonwealth v. Baez*, 554 Pa. 66, 117, 720 A.2d 711, 736 (1998); *Commonwealth v. Woodward*, 483 Pa. 1, 4, 394 A.2d 508, 510 (1978).

In the matter *sub judice*, appellant first raised this issue of the erroneous instruction in his post trial motions. In its opinion addressing appellant's post-trial motions, the trial court acknowledged its error in giving this erroneous instruction, but indicated that the error was harmless. We agree. First, trial counsel suggested in his closing remarks that his agreement to give a statement was predicated on a desire to curry favor with the police. He highlighted that Price only offered to make a statement implicating appellant after he was arrested and in custody on unrelated charges. Therefore, the jury was adequately apprised of the possibility that Price's statement to police may have been influenced by his hope of leniency in his open cases. Second, in its final charge to the jury, the trial court extensively instructed the jury regarding the proper legal principles regarding a witness's credibility. Specifically, the trial court stated:

How do you ago [sic] about appraising the credibility of a witness. . . . In evaluating the testimony of a witness, you should exercise your own intelligent judgment, your knowledge that has been obtained by you through your ordinary experience in your day-to-day living ... Among other things you should consider ... whether the witness had any motive or interest which might influence his or her testimony. . . .

Third, Price's credibility was extensively impeached by appellant's counsel regarding his thirteen past *crimen falsi* convictions. Finally, there was substantial other evidence to implicate appellant including appellant's confession, his attempted escape and eyewitness testimony. Therefore, this claim affords appellant no relief. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 334–35 (1999) (trial counsel's failure to cross-examine Commonwealth witness based on pending criminal charges and possible pro-prosecution bias was not the basis of a successful ineffectiveness claim where counsel impeached the witness with his prior felony record).

■ Appellant also contends that he was prejudiced by the erroneous instruction in the penalty phase because Price's testimony helped to establish two aggravating circumstances: that appellant was paid for killing the victim, 42 Pa.C.S. § 9711(d)(2); and that the victim was killed because of a drug rivalry, 42 Pa.C.S. § 9711(d)(14). However, there was ample other evidence to support both aggravating circumstances, including appellant's own confession. Because appellant has failed to establish that he was prejudiced during the penalty phase by counsel's failure to object to the erroneous jury instruction, this claim is also meritless.

■ Finally, appellant claims that trial counsel was ineffective for failing to request that the trial court instruct the jury that a life sentence means life without the possibility of parole, as enunciated by the U.S. Supreme Court under *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). This claim fails for several reasons. First, *Simmons* was decided in June of 1994, seven months after appellant was convicted. Prior to the decision in *Simmons,* the law in Pennsylvania expressly prohibited juries from being informed that life meant life without parole. *Commonwealth v. Edwards,* 521 Pa. 134, 158, 555 A.2d 818, 830 (1989). We have repeatedly held that trial counsel cannot be deemed ineffective for failing to anticipate that *Simmons* would change the law in this Commonwealth.[19] *Commonwealth v. Porter,* 556 Pa. 301, 728 A.2d 890, 901 (1999); *Commonwealth v. Gibson,* 547 Pa. 71, 104–05, 688 A.2d 1152, 1169, *cert. denied,* 522 U.S. 948, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997); *Commonwealth v. Speight,* 544 Pa. 451, 469, 677 A.2d

**19.** Appellant attempts to overcome this hurdle by arguing that trial counsel should have preserved the claim since certiorari had been granted in *Simmons* prior to commencement of the trial in the instant matter. *Simmons v. South Carolina,* 510 U.S. 811, 114 S.Ct. 57, 126 L.Ed.2d 27(Oct. 4, 1993) (granting certiorari). We find this argument unavailing. Notwithstanding the fact that certiorari had been granted, as noted above, at the time of trial the law in this Commonwealth expressly prohibited such an instruction. *Edwards, supra.* We need not consider this argument since as noted, the Commonwealth did not inject concern into the case regarding appellant's future dangerousness.

317, 326 (1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997).

Moreover, a *Simmons* instruction is only required where the "prosecutor injects concerns of the defendant's future dangerousness into the case." *Speight, supra.* Here, although appellant concedes that the prosecutor did not "specifically state that appellant might someday be released from custody," he nevertheless argues that, because the prosecutor mentioned appellant's past crimes, the implication was that appellant would continue to commit violent crimes unless he was sentenced to death. We recently rejected this argument and see no need to reconsider it. *Commonwealth v. May,* 551 Pa. 286, 291, 710 A.2d 44, 47 (1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 818, 142 L.Ed.2d 676 (1999) (rejecting the argument that a *Simmons* instruction was required where the Commonwealth did not argue that defendant would be dangerous in the future, but argued the aggravating circumstance of defendant's prior record of violent crimes); *Commonwealth v. Robinson,* 554 Pa. 293, 721 A.2d 344, 355 (1999), *petition for cert. filed,* (U.S. June 26, 1999) (No. 99–5578) (same). Hence, this claim affords appellant no relief.[20]

Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court has a duty to affirm the sentence of death unless we determine that:

(1) the sentence of death was the product of passion, prejudice, or any arbitrary factor;

(2) the evidence fails to support the findings of at least one aggravating circumstance specified in subsection (d); or

(3) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both

**20.** It must be noted that a minority of this court is of the view that a *Simmons* instruction should be given prospectively in all capital cases regardless of whether the issue of a defendant's future dangerousness is raised. *Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31 (Pa.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999) (Nigro, J. concurring, joined by Flaherty, C.J., joined in relevant part by Zappala, J.).

the circumstances of the crime and the character and record of the defendant.[21]

After reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. In addition, we further conclude that the evidence was sufficient to establish the aggravating factors found by the jury that appellant knowingly created a grave risk of danger to another person in addition to the victim of the offense, that appellant has a significant history of felony convictions involving the use or threat of violence to the person,[22] that appellant was paid by another person for killing the victim, and that appellant committed the murder to promote his drug activities. Moreover, in accordance with *Zettlemoyer, supra* at 26, 454 A.2d at 942, we must conduct a proportionality review as to appellant's sentence of death. A review of the data collected by the Administrative Office of the Pennsylvania Courts and our independent review of cases involving the death penalty reveals that appellant's verdict was not disproportionate to the penalty imposed in similar cases. *See e.g., Cox, supra, Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089 (1999); *Commonwealth v. Wayne,* 553 Pa. 614, 720 A.2d 456 (1998), *petition for cert. filed,* (U.S. May 13, 1999) (No. 98–9423); *Commonwealth v. Holloway,* 524 Pa. 342, 572 A.2d 687 (1990).

Accordingly, we affirm the verdict and the sentence of death imposed upon appellant by the Court of Common Pleas of Philadelphia County.[23]

Justice SAYLOR concurs in the result.

**21.** Effective June 25, 1997, the General Assembly repealed 42 Pa.C.S. § 9711(h)(3)(iii), pursuant to which this review is required. However, we continue to review for proportionality all cases on direct appeal in which the sentence of death was imposed prior to that date. *See Commonwealth v. Gribble,* 550 Pa. 62, 89, 703 A.2d 426, 439 (1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 519, 142 L.Ed.2d 430 (1998) (Act 28 does not apply retroactively).

**22.** The evidence established that appellant had been previously convicted of burglary, robbery and aggravated assault.

**23.** The Prothonotary of this Court is directed to transmit to the Governor's office the full and complete record of the trial, sentencing hearing,