# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01794-COA

**ROGER DALE CRAIG A/K/A ROGER CRAIG**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/11/2014 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | ERIN ELIZABETH PRIDGEN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| | JASON L. DAVIS |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MANSLAUGHTER WITH A FIREARM ENHANCEMENT, AND SENTENCED TO TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE AND FIVE YEARS SUSPENDED, AND TO FIVE ADDITIONAL YEARS FOR THE FIREARM ENHANCEMENT; COUNT II, ATTEMPTED AGGRAVATED ASSAULT, AND SENTENCED TO TWENTY YEARS WITH FIVE YEARS SUSPENDED; AND COUNT III, CARRYING A CONCEALED WEAPON, AND SENTENCED TO SIX MONTHS; WITH THE SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED, AND WITH THE SENTENCES IN COUNTS II AND III TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |

DISPOSITION:                 AFFIRMED IN PART, REVERSED AND
                                  RENDERED IN PART - 09/13/2016

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., WILSON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This is an appeal from a criminal conviction in Quitman County Circuit Court. On June 27, 2013, Roger Dale Craig fired one shot at David "Dusty" Wayne Smith III inside a combination service station and fast-food restaurant in Marks, Mississippi. The gunshot was fatal to Smith. Multiple bystanders were present on both the service and restaurant sides of the business. The lone bullet landed in the vicinity of Andrew Corey Autman, who was on the floor in the restaurant. Craig was charged with Smith's murder, a firearm enhancement, attempted aggravated assault on Autman, and carrying a concealed weapon. Craig was convicted of manslaughter with the firearm enhancement, attempted aggravated assault, and carrying a concealed weapon. At trial, the State used a theory of transferred intent for the attempted aggravated assault against Autman. Autman was untouched and physically unharmed. On appeal, Craig asserts the trial court erred by not granting his motion for a judgment notwithstanding the verdict (JNOV) on the attempted-aggravated-assault conviction and by granting the transferred-intent jury instruction. We reverse and render on the conviction of attempted aggravated assault. In all other respects, we affirm the trial circuit court's judgment.

**Facts and Proceedings Below**

¶2.     Craig and Smith had a history of conflict. Several witnesses testified that Smith had

2

made multiple threats against Craig before the shooting that killed Smith. On June 27, 2013, Craig drove onto the parking lot of a combined gas station and restaurant, crossing in front of Smith's parked vehicle. Craig and Smith then had a verbal exchange from their vehicles in the parking lot. Smith exited his vehicle, stepping towards Craig's vehicle. Craig then drove to the other side of the parking lot, parking in the front of the store. Smith got into his pickup, then exited the parking lot. Craig reentered his pickup, leaving in the same direction as Smith. Craig then came back to the service station. Craig exited his pickup, entering the store. He had a revolver in a scabbard in his pocket. Smith decided to turn his pickup around, even though his passengers protested, driving to the service station in search of Craig.

¶3. Smith parked by the station's pumps. Smith then walked into the store toward Craig, challenging Craig to an altercation. Craig moved away from Smith, warning Smith that he had a gun, and that he would shoot Smith. Craig drew a revolver while Smith intentionally followed Craig around a display in the store. Smith told Craig that he was not fearful of the pistol. As Smith closed in on Craig, Craig fired a single shot, hitting Smith in the abdomen. The bullet exited Smith's back, coming to rest on the floor of the restaurant area. Hearing the shot, Autman took cover on the floor, near the location of the bullet's resting place. The bleeding Smith walked to his pickup, and drove away. Smith later died at the local hospital.

¶4. At trial, Autman testified that he "heard the bullet come by [him]," that the bullet was two steps away from him, and that he dove to the ground after hearing the shot. He further testified that his diving caused him to be closer to the resting bullet than to the path of the bullet. Autman was asked if he was in the line of fire. He testified, "In a way, sir. A bullet

3

[does]n't have [a] name, you know. Like I said, I heard it when it c[a]me by me. So the way I see it, I was still in the crossfire, too. I could have been shot, too." Craig testified that he neither knew Autman, nor was aware of his presence in the store the day of the incident. Further, Craig testified that he had no intention to harm Autman when he fired his gun.

¶5.    The court instructed the jury on murder, and the lesser included offense of manslaughter. The court also instructed the jury on self-defense. Further, the court instructed the jury on aggravated assault and gave a transferred-intent instruction.

¶6.    The jury found Craig guilty of manslaughter with a firearm enhancement for killing Smith, attempted aggravated assault of Autman, and carrying a concealed weapon. Craig moved for a new trial or, in the alternative, a JNOV. The trial court denied Craig's motion.

**Discussion**

¶7.    On appeal, Craig only challenges his conviction for attempted aggravated assault on the bystander, Autman. Craig asserts the trial court erred in denying his motion for a JNOV on that conviction because the evidence was insufficient to sustain a conviction of attempted aggravated assault. Further, he asserts that the trial court erred in giving a transferred-intent jury instruction because it was an improper statement of the law. The crux of Craig's appeal is whether, under Mississippi law, the doctrine of transferred intent is applicable where the intended victim is injured but the unintended victim is unharmed.

¶8.    Questions of law are reviewed de novo. *Bester v. State*, 188 So. 3d 526, 528 (¶4) (Miss. 2016) (citing *Twillie v. State*, 892 So. 2d 187, 189 (¶6) (Miss. 2004)).

    I.    **Attempted Aggravated Assault**

4

¶9.     Mississippi Code Annotated section 97-3-7(2)(a)(ii) (Rev. 2014) states that a person is guilty of aggravated assault if he "*attempts* to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . ." (emphasis added). "An attempt to commit a crime consists of three elements: (1) an intent to commit a particular crime[,] (2) a direct ineffectual act done toward its commission[,] and (3) the failure to consummate its commission." *Brooks v. State*, 18 So. 3d 833, 841 (¶33) (Miss. 2009) (citing *Hughes v. State*, 983 So. 2d 270, 278 (¶28) (Miss. 2008); Miss. Code Ann. § 97-1-7 (Rev. 2006)). To establish the intent necessary to prove the attempted aggravated assault against Autman, the trial court allowed the jury to consider the theory of transferred intent.

¶10.    In its order denying Craig's motion for a JNOV or, in the alternative, a new trial, the trial court cited *Commonwealth v. Thompson*, 739 A.2d 1023 (Pa. 1999), and *State v. Elmi*, 207 P.3d 439 (Wash. 2009), as persuasive authority to support applying the transferred-intent theory to Craig for the attempted-aggravated-assault charge. We decline to follow these cases.

¶11.    In *Thompson*, the appellant was charged with, among other things, aggravated assault.[1] Similar to Mississippi, Pennsylvania's aggravated-assault statute both defines assault and includes attempt as one of the ways in which a person may be found guilty of

---

[1] In Pennsylvania, "a person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . [or] attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa. Cons. Stat. § 2702(a)(1), (4) (Rev. 2014).

aggravated assault. Pennsylvania has a separate statute defining attempt.[2] Under Pennsylvania law, the requisite intent of a person charged under the attempt provision of the aggravated-assault statute is determined under a totality-of-the-circumstances test with a list of nonexhaustive factors given, to be considered on a case-by-case basis.[3] *Com. v. Jackson*, 955 A.2d 441, 446 (¶15) (Pa. Super. Ct. 2008) (citing *Com. v. Alexander*, 383 A.2d 887 (Pa. 1978)). We further note that Washington has a different statutory scheme for assault than Mississippi.[4]

## II.    Transferred Intent

¶12.    Under the doctrine of transferred intent, "the malicious intent of the unlawful act directed toward one person is transferred to the other person." *Dobbins v. State*, 766 So. 2d 29, 33 (¶11) (Miss. Ct. App. 2000) (quoting *Ross v. State*, 158 Miss. 827, 832, 131 So. 367, 368 (1930)). "The doctrine is applicable to the crime of assault. Thus if A, intending to strike

---

[2] The Pennsylvania Code provides that "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. Cons. Stat. § 901(a) (Rev. 2016).

[3] "The list included evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and statements or actions that might indicate his intent to inflict injury." *Jackson*, 955 A.2d at 446 (¶15).

[4] Washington's assault statutes do not define assault. "Washington recognizes three common law definitions of assault: 1) an unlawful touching (actual battery)[,] 2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery)[,] and 3) putting another in apprehension of harm." *State v. Abaun*, 257 P.3d 1, 10 (¶37) (Wash. Ct. App. 2011). Further, "under the common law specific intent either to create apprehension of bodily harm or to cause bodily harm is an essential element of assault in the second degree." *Id*.

B, misses him and strikes C, or if mistaking C for B, he strikes him, he is in either case guilty of an assault and battery on C." *Hitt v. State*, 988 So. 2d 939, 942 (¶12) (Miss. Ct. App. 2008) (quoting *Jones v. State*, 6 So. 231, 232 (Miss. 1889)). The State asserts, and the trial court agreed, that transferred intent can also be applied where the intended victim (Smith) is killed and the unintended victim (Autman) is unharmed. Whether the transferred-intent doctrine can be applied to establish the requisite intent for an attempted assault against an unintended, unharmed victim is at issue before the Court.

¶13.    In *Thompson*, the appellant was aware of the unharmed, unintended victim's presence and fired numerous rounds at a group of three individuals that included the unharmed, unintended victim, as well as the intended and actual victim. *Thompson*, 739 A.2d at 1027. The unintended victim was forced to run in a zig-zag pattern to avoid being hit by the appellant's bullets. *Id*. The unintended victim was in such fear of harm that he initially thought that he had been shot, and only upon realizing that he was, in fact, not shot, did he seek cover. *Id*. The appellant, after hitting his intended victim, continued by standing over the intended victim and firing multiple rounds into his head and torso. *Id*. In addition to murder, the appellant was charged with attempted aggravated assault on the unintended victim, and the commonwealth used the theory of transferred intent to establish the requisite intent. We note that the Pennsylvania Supreme Court's application of transferred intent in *Thompson* has come under heavy criticism by an intermediate appellate court from that state. *Jackson*, 955 A.2d at 450 n.6; *Com. v. Pace*, No. 116 EDA 2014, 2015 WL 7458814, at *8 n.1 (Pa. Super. Ct. Mar. 24, 2015).

¶14.    In *Elmi*, the appellant fired multiple shots through the intended victim's living room window while standing roughly ten feet away. *Elmi*, 207 P.3d at 441 (¶2). The intended victim and three small children, the unintended and uninjured victims, were all in the living room. *Id*. Further, the children were in clear apprehension of fear of being harmed. *Id*. at (¶3) ("The [911] operator could hear children screaming in the background and, at one point, a child's voice saying someone was going to kill mommy."). The appellant was convicted under Washington's first-degree-assault statute for several counts relating to the children.[5]

¶15.    Two years later, the Washington Court of Appeals declined to extend *Elmi* in *State v. Abaun*, 257 P.3d 1, 12 (¶¶48-49) (Wash. Ct. App. 2011). In *Abaun*, the appellant fired several rounds into the attached garage of a residence with the unintended, unharmed victim in the house. He was charged under Washington's second-degree-assault statute.[6] There was no evidence that the appellant knew the unintended victim was in the house or that the appellant intended to fire the gun at the unintended victim; all the shots were fired at the garage, not the house; and there was no evidence that the unintended victim apprehended any fear of harm. *Id*. at 12-13 (¶¶49-51). The *Abaun* court specifically noted that the *Elmi* appellant's actions put the unintended victims, the small children, in apprehension of bodily harm, thus meeting the actus reus element of Washington's common-law form of assault. *Id*.

---

[5] "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm[,] . . . [a]ssaults another with a firearm or deadly weapon or by any force or means likely to produce great bodily harm or death[.]" Wash. Rev. Code Ann. § 9A.36.011(1)(a) (West 2016).

[6] "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree[,] . . . [a]ssaults another with a deadly weapon[.]" Wash. Rev. Code Ann. § 9A.36.021(1)(c) (West 2016).

at 12 (¶45). The court reasoned that to extend the transferred-intent analysis from *Elmi* to the situation in *Abaun* would mean "arguably anyone in the neighborhood who heard the gunshots could be a victim of an assault by [the appellant]." *Id*. at (¶48).

¶16.    In the case at hand, only one shot was fired, and Autman was in the restaurant, a different area of the building than Smith and Craig. Further, when asked if he was in the line of fire, Autman could not answer in the affirmative. Autman also noted that his diving to the floor caused him to be closer to where the bullet landed than where he was standing before the shot was fired. Craig testified that he had neither any intent to harm Autman nor any knowledge that Autman was even in the building. Further, no evidence was put forth at trial that Autman had any fear of being harmed when the shot was fired.

¶17.    We find the factual scenario in *Abaun* far more analogous to the one now before us than *Elmi* and *Thompson* and, like the court in *Abaun*, we are unwilling to extend the transferred-intent doctrine to the case at hand. We decline to allow the doctrine of transferred intent to apply in this particular situation. Here, the intended victim, Smith, was killed, while the unintended victim, Autman, was not harmed. The defendant, Craig, had no intention to harm Autman and was not aware of the Autman's presence. Just one shot was fired, Autman was in a different part of the building, and there was no evidence that Autman was in any fear of harm. Further, to allow such an interpretation would be contrary to the requirement of injury to the unintended victim, as the Mississippi Supreme Court has held that transferred intent stands for the accidental striking of a person other than the one intended. *Hitt*, 988 So. 2d at 942 (¶12) (quoting *Jones*, 6 So. at 232). Therefore, we reverse the trial court on its

9

application of the transferred-intent doctrine in this case.

¶18.     Furthermore, the Mississippi Code is explicit that there must be an injury nexus in an assault case. Mississippi Code Annotated section 97-3-7(2)(a) provides four ways for the State to prove that Craig committed an aggravated assault on Autman: (1) that Craig *attempted* to cause serious bodily injury to Autman, (2) that Craig caused serious bodily injury to Autman purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life, (3) that Craig *attempted* to cause bodily injury to Autman with a deadly weapon or other means likely to produce death or serious bodily harm, or (4) that Craig purposely or knowingly caused bodily injury to Autman with a deadly weapon or other means likely to produce death or serious bodily harm. Here, Autman suffered no bodily injury, let alone any serious bodily injury. Thus, to prove aggravated assault, the State must demonstrate that Craig *attempted* to cause either (1) serious bodily injury to Autman, or (2) bodily injury to Autman with a deadly weapon or other means likely to produce death or serious bodily harm. For an attempt crime, an intent to commit the particular crime must be established. *Brooks*, 18 So. 3d at 841 (¶33) (citations omitted).

¶19.     Thus, because no bodily injury occurred, the State must have established an "unequivocal intent to cause serious bodily injury to [Autman]" in order to uphold Craig's attempted-aggravated-assault conviction. *Hunter v. State*, 2014-KA-00508-COA, 2015 WL 7438890, at *3 (¶15) (Miss. Ct. App. Nov. 24, 2015) (citations omitted). The record fails to show that Craig intended to cause serious bodily harm to Autman. Therefore, we reverse and

render Craig's conviction for attempted aggravated assault.

## Conclusion

¶20.     We reverse and render the Quitman County Circuit Court's judgment on the conviction of Craig for the attempted aggravated assault of Autman. On the remaining counts, we affirm.

¶21.     **THE JUDGMENT OF THE QUITMAN COUNTY CIRCUIT COURT OF CONVICTION ON COUNT II IS REVERSED AND RENDERED. FOR ALL REMAINING COUNTS, THE JUDGMENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES AND WILSON, JJ., CONCUR.  CARLTON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**