J-S27028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SHARIF HOOKER | : | |
| Appellant | : | No. 643 EDA 2016 |

Appeal from the Judgment of Sentence June 26, 2008
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001279-2007

BEFORE:    GANTMAN, P.J., OTT, J. and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED MAY 23, 2017**

Sharif Hooker appeals *nunc pro tunc* from the judgment of sentence imposed on June 26, 2008, in the Court of Common Pleas of Philadelphia County.[1]  A jury convicted Hooker of three counts of criminal attempt – murder, three counts of aggravated assault, and one count each of robbery – threat of immediate serious injury, kidnapping – facilitate a felony, and criminal conspiracy.[2]  The trial court subsequently imposed an aggregate sentence of 20 to 40 years' imprisonment.  In this appeal, Hooker raises the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Hooker's direct appeal rights were reinstated for the second time *via* a successful Post-Conviction Relief Act (PCRA) petition.  **See** 42 Pa.C.S. §§ 9541–9546.

[2] **See** 18 Pa.C.S. §§ 901(a), 2702(a), 3701(a)(1)(ii), 2901(a)(2), and 903(a)(1), respectively.

following issues:  (1) the sufficiency of the evidence, (2) the legality of his mandatory minimum sentences, (3) the discretionary aspects of his sentence, (4) merger, and (5) credit for time served.  Based upon the following, we affirm Hooker's convictions but vacate the judgment of sentence and remand for resentencing.

The trial court summarized the procedural history of this appeal, as follows:

> On March 25, 2008, at the conclusion of his jury trial before the Honorable[] John J. O'Grady, Jr., [Hooker] was convicted of: Criminal Conspiracy Engaging – Murder[3]; Three Counts of Aggravated Assault; Three Counts of Criminal Attempt - Murder; Robbery with Threat of Serious Bodily Injury; and Kidnapping to Facilitate a Felony. On June 26, 2008, [Hooker] was sentenced to periods of confinement in a state correctional institution for consecutive periods of 5 to 10 years for each of the three charges of aggravated assault and the charge of conspiracy to commit murder and concurrent periods of confinement of 10 to 20 years for the charge of attempted murder and 5 to 10 years for the charge of robbery. [Hooker's] cumulative sentence is 20 to 40 years confinement. [Hooker] did not take [a] direct appeal.
>
> [Hooker] has since filed two petitions pursuant to the Post Conviction Relief Act (PCRA). [Hooker's] first PCRA petition was timely filed August 20, 2009, pursuant to PCRA, 42 Pa.C.S.A.

_____

[3] The trial court inadvertently states Hooker was convicted of criminal conspiracy engaging – murder.  Count 1 of the Information charged Hooker with "criminal conspiracy engaging – (F1)," and specified the "criminal objective" as "murder/assault." Information, 2/16/2007 (Count 1). The jury found Hooker guilty of criminal conspiracy and, on the verdict sheet, as to the question of the object of the conspiracy, circled  "aggravated assault" and crossed out "murder."   N.T., 3/25/2008, at 41; Verdict Report, 3/25/2008, at 2.

§ 9545(b)(1) seeking reinstatement of appellate rights *nunc pro tunc*, which the PCRA court granted April 9, 2010. [Hooker] timely filed his Notice of Appeal May 6, 2010. Instead of filing a 1925(b) Statement of Matters Complained of on Appeal, [Hooker's] counsel filed a petition to withdraw and an **Anders**[4] brief, stating there were no meritorious issues to appeal. After a thorough review, the Superior Court granted counsel's withdrawal and affirmed [Hooker's] conviction and sentence. **See Commonwealth v. Hooker**, No. 1246 EDA 2010 (Pa. Super. Sept 12, 2011) (Non-precedential).

[Hooker's first] PCRA petition [following the Superior Court's decision affirming the judgment of sentence] was timely filed October 24, 2011 seeking reinstatement of his appellate rights on the grounds that [Hooker] did not receive proper notice of Counsel's **Ander**[**s**] brief. The Court granted [Hooker's] petition on February 18, 20
16. On February 24, 2016, [Hooker] timely filed the instant appeal and March 9, 2016, filed his Statement of Errors pursuant to Pa.R.A.P. 1925(b)[.]

Trial Court Opinion, 7/18/2016, at 1–2.

The first issue raised in this appeal is a challenge to the sufficiency of the evidence. Our standard of review for a sufficiency challenge is well settled:

When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner and must determine whether the evidence was such as to enable a fact finder to find that all of the elements of the offense[] were established beyond a reasonable doubt. **Commonwealth v. Castelhun**, 889 A.2d 1228, 1230-32 (Pa. Super. 2005) (internal citations omitted). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record

---

[4] **Anders v. California**, 386 U.S. 738 (1967).

- 3 -

contains support for the convictions they may not be disturbed. ***Commonwealth v. Hartle***, 2006 PA Super 45, 894 A.2d 800, 803 (Pa. Super. 2006). Lastly, the finder of fact may believe all, some or none of a witness's testimony. ***Castelhun***, 889 A.2d at 1232.

***Commonwealth v. Holley***, 945 A.2d 241, 246-47 (Pa. Super. 2008).

This Court previously summarized the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, as follows:

At 8:15 p.m., on August 24, 2006, [Curtis Williams, Jr.] drove his employees home from work. N.T., 3/18/08, at 58. After dropping off his employees, Williams saw Hooker at the corner of 55th and Broomall Streets in Philadelphia. ***Id.*** at 58-59. Williams stopped his truck and began talking to Hooker. ***Id.*** at 59. At some point, Hooker entered the truck, sitting in the driver's seat, while Williams slid over into the passenger seat. ***Id.*** at 60-61. Immediately thereafter, [Hooker's co-defendant, Aaron Briddell] barged into the truck by means of the passenger side door. ***Id.*** at 62.

Once inside of the truck, Briddell pulled out a gun and demanded that Hooker drive Briddell to Garman Street. ***Id.*** at 63. According to Williams, Briddell "started to act crazy and put the gun in [sic] my head[,]" and that both men began beating him. ***Id.*** at 64; N.T., 3/19/08, at 228. Briddell also demanded money from Williams, threatening to kill him. ***Id.*** at 228. The men took $130 from Williams's pocket and drove him to an alley. ***Id.*** at 229. While stopped in the alley, two other men approached the vehicle and told Briddell and Hooker that they should kill Williams. ***Id.***

Hooker and Briddell then drove Williams to 73rd and Garman Streets. N.T., 3/18/08, at 65-66. When the vehicle stopped on Garman Street, Williams hailed a man known to him as "Geese." N.T., 3/19/08, at 229. As Geese walked towards the car window, Williams jumped out of the vehicle and ran towards the steps of a nearby house. N.T., 3/19/08, at 229-30. Williams repeatedly shouted out to Geese, "They're stickup guys!" ***Id.*** at 230. In a signed statement to police, the contents of which were testified to at trial, Williams specifically stated that both Hooker and Briddell shot at him as he ran up the steps to the house. ***Id.*** In

his signed statement, Williams described Hooker as shooting at him with an "automatic gun." "It was a black gun." *Id.* at 232.

Susan Georigi ("Georigi") lived on Garman Street with her daughter, Carin, at the time of the shooting. *Id.* at 110, 154-55. Georigi testified that during the evening of August 24, 2006, she saw a white car stop a few houses down from her residence on Garman Street. *Id.* at 154-55. As Georigi sat on her front porch with Carin, she saw Williams jump out of the truck and run up her front stairs. *Id.* at 155. According to Georigi, Williams "stopped on the landing and he said to the man that was talking to him in the truck, 'run, they're going to shoot, it's a setup.'" *Id.* As Williams said the word "shoot," "the bullets started coming, [and] Carin and I jumped up and tried to run into the house[.]" *Id.* At that time, Georigi saw that Carin had been struck by a bullet above her ear. *Id.* Subsequently, Carin received 12 to 15 stitches for the wound at the hospital. *Id.* at 157.

Carin testified at trial that she, too, saw Williams jump out of the vehicle, run up her stairs and yell "[i]t's a setup, they're going to shoot." *Id.* at 111. As Carin fled inside of the house, she felt a burning sensation on her head and discovered that her head was bleeding. *Id.* According to Carin, three bullets struck Georigi's porch roof, one struck the sidewall of the house and another struck the roof. *Id.* at 135.

Malik[a] Huff ("Huff") testified that on August 24, 2006, while visiting a friend's house and standing near the door, a man opened the door of the house. *Id.* at 163, 165-66. As the door opened, Huff was shot in her right thigh. *Id*. at 166.

*Commonwealth v. Hooker*, 34 A.3d 220 [1246 EDA 2016] (Pa. Super. 2016) (unpublished memorandum, at 7–9).

Hooker argues the Commonwealth's evidence was insufficient to convict him of attempted murder because there was no showing he intended to kill the complainants. *See* Hooker's Brief at 7. Although Hooker states in his brief that "[t]he evidence was insufficient to convict [him] of two counts

of attempted murder,"[5] we note Hooker was convicted of three counts of attempted murder — as to Williams, Giorigi, and Huff.

Here, Hooker contends "[t]he shooting occurred to effectuate a robbery and escape therefrom and the shots fired were not directed at anyone in particular but in a scatter shot way." *Id.* Hooker maintains, the Commonwealth did not establish the requisite *mens rea* for the crime, *i.e.*, the specific intent to kill. *Id.*

The legal authority that applies to the charges of attempted murder was set forth by this Court in Hooker's previous appeal:

> "A person commits an attempt when, with intent to commit a specific crime, he does any at which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." ***Commonwealth v. Jackson***, 955 A.2d 441, 444 (Pa. Super. 2008) (internal quotation marks and citations omitted). "The substantial step test broadens the scope of attempt by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." ***Id.*** (citation omitted). Specific intent to kill may be inferred from the use of a deadly weapon upon a vital part of the body. ***Commonwealth v. Davis***, 861 A.2d 310, 324 (Pa. Super. 2004).

***Hooker, supra,*** 34 A.3d 220 [1246 EDA 2016] (Pa. Super. 2016) (unpublished memorandum, at 5–6).

---

[5] Hooker's Brief at 7.

Furthermore, relevant to the specific issue Hooker raises herein regarding proof of the requisite *mens rea*, it is important to note the doctrine of transferred intent provides the intent to murder may be transferred where the person actually killed is not the intended victim.[6] **See Commonwealth v. Padilla,** 80 A.3d 1238, 1247 (Pa. 2013). **See also Commonwealth v. Thompson**, 739 A.2d 1023, 1029-1030 (Pa. 1999) (citation omitted) ("The doctrine of transferred intent provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime."); **Commonwealth v. Jackson**, 955 A.2d 441, 445-446 (Pa. Super. 2008) (concluding that evidence was sufficient to support aggravated assault conviction under transferred intent doctrine when bystander was injured in shooting).

Here, viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth as verdict winner, we conclude the evidence was sufficient to sustain Hooker's three convictions for attempted murder. When Williams fled from the vehicle, Briddell and Hooker both fired their guns at him as he attempted to escape into a house. In the gunfire, Carin Georigi and Malika Huff were struck by bullets. Although Hooker argues the evidence is consistent with an intent to effectuate a robbery and

---

[6] The doctrine of "transferred intent," is codified at 18 Pa.C.S. § 303(b). **See Commonwealth v. Jackson**, 955 A.2d 441, 448 n.4 (Pa. Super. 2008), *citing* **Commonwealth v. Devine**, 750 A.2d 899, 904 (Pa. Super. 2000).

escape, the jury could reasonably infer that Briddell and Hooker shared a specific intent to kill Williams by shooting at him as he attempted to run away from them. **See Commonwealth v. Jones**, 610 A.2d 931, 938 (Pa. 1992) (specific intent to kill inferred from appellant's conduct in firing barrage of bullets at crowd of people in courtyard). Moreover, with regard to Georigi and Huff, the doctrine of transferred intent applies, and the specific intent to kill Williams transferred to Georigi and Huff who were both hit by bullets. **See Padilla, supra; Thompson, supra; Jackson, supra**. Accordingly, we reject Hooker's sufficiency challenge to his convictions for attempted murder.

The remaining issues raised by Hooker are attacks upon his sentence. Because we agree with the Commonwealth that resentencing is required without application of mandatory minimum sentences, and that the doctrine of merger is applicable, we need not address Hooker's challenge to the discretionary aspects of his sentence and his claim that the trial court failed to give him credit for time served.

By way of background, we point out that because Hooker's direct appeal rights were reinstated *nunc pro tunc* by the PCRA court, Hooker is currently proceeding on direct appeal. Specifically, the effect of the reinstatement of direct appeal rights *nunc pro tunc* based on a PCRA petition is that the judgment of sentence is no longer final and, thus, the initial PCRA is a nullity so that there cannot be an appeal from its partial denial. **See**

*Commonwealth v. Leslie*, 757 A.2d 984, 985-86 (Pa. Super. 2000) (holding that PCRA petition may be filed only after appellant has waived or exhausted direct appeal rights). *See also Commonwealth v. Fowler*, 930 A.2d 586, 591 (Pa. Super. 2007) (citation omitted) ("It is now well[-]established that a PCRA petition brought after an appeal *nunc pro tunc* is considered [an] appellant's first PCRA petition, and the one-year time clock will not begin to run until this appeal *nunc pro tunc* renders his judgment of sentence final.").

Here, Hooker's appeal rights were initially reinstated in 2010 as the result of a successful PCRA petition, and this Court affirmed the judgment of sentence in 2011. Hooker then filed a subsequent PCRA petition, which constituted a first petition for PCRA purposes. *See Fowler, supra*. For the second time, the PCRA court reinstated Hooker's direct appeal rights *nunc pro tunc*, and this appeal followed. Therefore, Hooker's judgment of sentence is no longer final and he is now on direct appeal.

Having established the present procedural posture of this case, we turn to Hooker's challenge regarding his mandatory minimum sentences. In *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the United States Supreme Court held that any fact that, by law, increases the penalty for a crime must be treated as an element of the offense, submitted to a jury, rather than a judge, and found beyond a reasonable doubt. *See Alleyne*, 133 S. Ct. at 2163. The effect of *Alleyne* was to invalidate a range of

Pennsylvania sentencing statutes predicating mandatory minimum penalties upon non-elemental facts and requiring such facts to be determined by a preponderance of the evidence at sentencing. *See Commonwealth v. Wolfe,* 140 A.3d 651, 653 (Pa. 2016).

In this case, the trial court imposed five-year mandatory minimum sentences on the three counts of aggravated assault and one count of criminal conspiracy pursuant to 42 Pa.C.S. § 9712 ("Sentences for offenses committed with firearms"). The Commonwealth states in its brief that "[b]ecause Pennsylvania's mandatory [minimum] sentencing statutes have been ruled unconstitutional under *Alleyne* and its progeny, [the] Commonwealth does not oppose [Hooker's] request for resentencing." Commonwealth's Brief at 13–14 (citations omitted). We agree with the Commonwealth that Hooker is entitled to resentencing.

In *Commonwealth v. Valentine*, 101 A.3d 801, 811–812 (Pa. Super. 2014), this Court, applying *Alleyne*, found the mandatory sentencing provision of 42 Pa.C.S. § 9712 unconstitutional. Recently, the Pennsylvania Supreme Court definitively held that, even if the issue is not preserved, relief under *Alleyne* is available in cases on direct appeal. *Commonwealth v. Barnes*, 151 A.3d 121 (Pa. 2016) ("[W]here the mandatory minimum sentencing authority on which the sentencing court relied is rendered void on its face, and no separate mandatory authority supported the sentence, any sentence entered under such purported authority is an illegal sentence

for issue preservation purposes on direct appeal. Thus, Appellant is entitled to resentencing notwithstanding his failure to preserve his issue prior to seeking our review."). Accordingly, in this case, because Hooker is proceeding on a reinstated direct appeal, he is entitled to the benefit of *Alleyne*.

Furthermore, the Commonwealth concedes that Hooker "is correct that the crimes of attempted murder and aggravated assault merge for sentencing."[7] We agree the merger doctrine applies in this case. Here, Hooker was sentenced on three counts of aggravated assault (Williams, Georigi, and Huff) and one count of attempted murder (Georigi).[8] Hooker's crimes of attempted murder and aggravated assault against the three complainants "arise from a single criminal act," 42 Pa.C.S. § 9765,[9] and "all of the statutory elements of one offense are included in the statutory

---

[7] Commonwealth Brief at 14.

[8] *See* Order, 6/26/2008.

[9] Section 9765 of the Sentencing Code governs the merger of sentences, and provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

elements of the other offense." ***Id.   See Commonwealth v. Anderson***, 650 A.2d 20, 24 (Pa. 1994) (holding that, for merger purposes, all of the statutory elements for the crime of aggravated assault are included within the statutory elements for the crime of attempted murder.).   Therefore, merger applies to the offenses of attempted murder and aggravated assault for purposes of sentencing.[10]

Based on our conclusion that Hooker's ***Alleyne*** and merger arguments have merit, it is proper for this Court to vacate the sentence in its entirety and remand for resentencing.  ***See Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283 (stating generally if appellate court alters overall sentencing scheme, then remand for re-sentencing is proper).   Accordingly, we affirm Hooker's convictions but vacate the judgment of sentence and remand for resentencing consistent with this memorandum.

Judgment of sentence vacated.   Case remanded for resentencing. Jurisdiction relinquished.

---

[10] Hooker also argues that his offenses of attempted murder and conspiracy to commit murder merge for purposes of sentencing, and in support cites 18 Pa.C.S. § 906 ("Multiple convictions of inchoate crimes barred").   ***See*** Hooker's Brief at 14.   However, as we have already noted, the jury found Hooker guilty of conspiracy to commit aggravated assault, not murder.   ***See*** Footnote 3, ***supra***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017