# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00337-COA

**JEREMY JEROME BROWN**                                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2020 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/28/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Jeremy Jerome Brown was convicted of four counts of aggravated assault after he fired a gun multiple times into a vehicle occupied by four people.  On appeal, he argues that three of the convictions must be reversed because he only intended to shoot one of the car's occupants and did not injure or intend to injure the other three occupants of the car.  Because the jury could have concluded beyond a reasonable doubt from the evidence that Brown intended to cause bodily injury with a deadly weapon to all the car's occupants, we find no merit to Brown's argument and affirm Brown's convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

¶2.    Around 11:30 p.m. on May 31, 2019, three teenagers, Mitchelle Crouther, her younger sister Countess Crouther, and a friend Dwayln Culberson, went to a house party on Gum Street in Philadelphia, Mississippi.  A little after midnight, Mitchelle and Dwayln decided to leave the party.  Countess was waiting on them in Mitchelle's vehicle.  As Mitchelle and Dwayln started to leave, they saw a friend dancing on a truck.  Mitchelle tried "to get her to come on."

¶3.    Brown, who was approximately twenty-eight years old, approached Mitchelle and told her that she and her friend needed to leave the party because they were drunk.  Mitchelle knew Brown because he had a child with her older sister.  A verbal altercation ensued between Mitchelle and Brown.  Dwayln testified that Mitchelle said "something that [Brown] didn't like," and she "swung on him" but did not hit him.  Brown kicked her, and she stumbled backward.  Dwayln testified he was holding on to her and telling her "let's go."  Mitchelle's friend, Kinte Hickman, ran over to help Mitchelle.  According to Dwayln, Kinte "swung on [Brown]," hitting him maybe twice.  Brown's sister ran over, and she and Brown jumped on Kinte.  Kinte broke loose and fled down the street on foot.  Kinte testified that after fleeing he caught a ride to go tell Mitchelle's mother what happened, although neither Mitchelle nor Dwayln knew where Kinte had gone.  At some point during the altercation, someone fired a "warning shot" into the air to break up the fight.

¶4.    Mitchelle and Dwayln, who were already walking toward Mitchelle's vehicle to leave the party, ran and got into the vehicle.  Dwayln testified that as he and Mitchelle got into the vehicle, he saw Brown "fighting somebody over a gun. . . . [H]e was trying to get a gun out

2

of somebody's . . . hand." Brown succeeded in getting the gun. Dwayln drove Mitchelle's vehicle toward Mitchelle's house. As he drove, Countess was sitting in the front passenger seat, and Mitchelle was sitting in the backseat on the passenger side.

¶5. Around ten minutes after leaving the party, they arrived approximately a half mile away in front of Mitchelle's grandmother's house on Border Street. Dwayln stopped the vehicle in the street, and Kinte came out of the house. Kinte got into the backseat of the vehicle on the driver's side. Mitchelle was seated in the backseat next to him.

¶6. Mitchelle testified that Kinte had just walked to her car from her grandmother's house and sat down in the backseat when a black Chrysler "pulled directly right beside [them], and the back door opened, and . . . three shots went off . . . ." Kinte had not yet closed the car door, and the back passenger door of the Chrysler was almost touching the open back driver's side door of Mitchelle's vehicle. Mitchelle, Dwayln, and Countess all testified that before the shots were fired, they heard Brown's voice inside the Chrysler say, "Where's Kinte?" And once Brown identified Kinte in the vehicle, he started shooting. Although Mitchelle testified she heard three shots, Kinte testified that Brown shot four or five times. A bullet grazed Kinte's left shoulder. Brown never exited the vehicle, and the vehicle immediately left. Mitchelle testified she did not see the person's face who spoke, but she "definitely . . . recognized" the voice as Brown's. Countess and Dwayln also testified that they knew Brown and recognized Brown's voice. When asked at trial who shot him, Kinte identified Brown.

¶7. Photographs were admitted into evidence showing bullet holes in Mitchelle's vehicle.

3

A bullet hole was found in the vehicle's sunroof and behind the back passenger door on the driver's side, and damage was found on the inside of the back driver's side door just behind the driver's seat where a bullet grazed the inside of the open door. Mitchelle stated that the bullets came "[v]ery close" to her; she ducked so that they went above her head. Countess also testified that she ducked to avoid being struck. Dwayln testified that he feared for his life.

¶8. Brown was indicted in the Neshoba County Circuit Court for separate counts of aggravated assault against Mitchelle, Countess, Dwayln, and Kinte. On March 11, 2020, he was tried by jury and found guilty of all four counts. On March 20, 2020, the circuit court sentenced him to serve fifteen years for each count in the custody of the Mississippi Department of Corrections with the sentences set to run consecutively to one another and to any sentence currently being served. Brown filed a motion for a new trial, which was denied. Brown appeals.

## DISCUSSION

¶9. Brown raises one issue on appeal: whether the evidence was sufficient to support the convictions of aggravated-assault against Mitchelle, Countess, and Dwayln. Brown does not challenge his convictions of aggravated-assault against Kinte. Brown concedes that he tracked down Kinte and intentionally injured him by shooting him in the shoulder. However, Brown argues that his actions were directed against Kinte alone and not the other occupants of the vehicle. Brown argues that because he did not intend to injure—nor did he injure—Mitchelle, Countess, or Dwayln, the evidence was insufficient to support the guilty

4

verdicts as to the counts of aggravated assault against them.

¶10.    When reviewing a challenge to the sufficiency of the evidence, we must consider whether "the facts and inferences so considered point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty . . . ." *Henley v. State*, 136 So. 3d 413, 415-16 (¶8) (Miss. 2014).  The evidence must be viewed "in the light most favorable to the State, giving the State the benefit of all favorable inferences reasonably drawn from the evidence." *Id.* at 415 (¶8).  "In reviewing whether a verdict is supported by the evidence, [appellate courts] are required to look at the totality of the circumstances . . . ." *Downs v. State*, 962 So. 2d 1255, 1259 (¶14) (Miss. 2007).

¶11.    "A person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . ." Miss. Code Ann. § 97-3-7(2)(a)(ii) (Supp. 2016). "The statute makes no distinction between aggravated assault and attempted aggravated assault; substantively, they are the same crime." *Wilson v. State*, 904 So. 2d 987, 996 (¶32) (Miss. 2004).  To prove an attempt to commit a crime, the State must establish "1) an intent to commit a particular crime, 2) a direct ineffectual act done toward its commission, and 3) failure to consummate its commission." *Morris v. State*, 748 So. 2d 143, 146 (¶11) (Miss. 1999).  In addition, the State must establish that the defendant acted with an "unequivocal intent to cause serious bodily injury to the victim." *Hunter v. State*, 196 So. 3d 998, 1002 (¶15) (Miss. Ct. App. 2015).

¶12. Although Brown said "Where's Kinte?" before he pulled the trigger, the jury could reasonably infer from the totality of the circumstances that Brown intended to injure all the occupants of the vehicle with a deadly weapon. Approximately ten minutes prior to Brown's shooting into the vehicle, Brown and Mitchelle had been in an altercation during which Mitchelle attempted to hit Brown, and Brown kicked Mitchelle. Dwayln and Kinte became involved in the altercation when they intervened to protect Mitchelle. Kinte hit Brown twice before fleeing on foot. Mitchelle, Countess, and Dwayln left the party separately in Mitchelle's vehicle and were joined later by Kinte. After fighting someone for a gun and obtaining the gun, Brown got into a vehicle and pursued Mitchelle's vehicle. After Brown confirmed that Kinte was in the vehicle, he fired three to five shots into the vehicle. Photographs were admitted into evidence showing bullet holes in the vehicle's sunroof and behind the back passenger door on the driver's side, and damage to the inside of the back driver's side door just behind the driver's seat where a bullet grazed the inside of the open door. All four victims testified that they feared for their lives, and Mitchelle and Countess testified that they ducked to avoid the bullets coming into the vehicle.

¶13. In *Brown v. State*, 157 So. 3d 836 (Miss. Ct. App. 2014), and *McCray v. State*, 263 So. 3d 1021 (Miss. Ct. App. 2018), the appellants argued that they were not guilty of aggravated assault against an unintended victim. The factual situations presented are similar to the current case. In *Brown*, Edmond Brown was found guilty of aggravated assault against Cedric Glover after shooting a gun multiple times into a vehicle being driven by Cedric. *Brown*, 157 So. 3d at 838 (¶11). On appeal, Edmond argued that he was not guilty of

aggravated assault against Cedric because his "intended target was always and only Frederick [Glover]," a passenger in the vehicle, and that "he 'never attempted to do bodily injury, serious or otherwise,' to Cedric." *Id.* at (¶10). This Court found no merit to Edmond's argument. *Id.* at (¶11). Numerous eyewitnesses testified that multiple shots were fired at the vehicle to prevent it from leaving the parking lot; bullet holes were found in the car's bumper and driver's side door, and two spent projectiles were found in the trunk and by the driver's side door. *Id.* Eyewitnesses also saw Edmond beside the car with a gun just before the shooting occurred, and gunshot residue was found on Edmond's hands. *Id.* This Court found that based on the evidence presented, a reasonable jury could have found Edmond guilty of aggravated assault against Cedric. *Id.*

¶14. In *McCray*, La'Darrian McCray shot Glentez Brown several times while Glentez was holding his infant son. *McCray*, 263 So. 3d at 1029 (¶26). Glentez died as a result of his injuries; his infant son was not injured. *Id.* at 1024-25 (¶¶4, 9). McCray was convicted of first-degree murder of Glentez and aggravated assault against the infant. *Id.* at 1025 (¶10). On appeal, McCray argued the evidence was insufficient to sustain the aggravated-assault conviction because he did not possess the intent required to commit aggravated assault against the infant. *Id.* at 1028 (¶23). This Court found that accepting as true all evidence favorable to the State, reasonable and fair-minded jurors could have inferred that McCray intended to inflict bodily injury with a deadly weapon upon the infant because McCray shot Glentez multiple times while Glentez was holding the infant. *Id.* at 1029 (¶26).

¶15. Viewing the evidence in the light most favorable to the State, reasonable and fair-

7

minded jurors could have inferred that Brown intended to inflict bodily injury on all four victims with a weapon likely to produce death or serious bodily harm, a gun, when he pursued the vehicle occupied by the victims and fired multiple shots into the vehicle. We find that the State presented sufficient evidence for the jury to find Brown guilty of aggravated assault against all four victims. We affirm Brown's convictions and sentences.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**