# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00575-COA

**DONALD RAY ROBINSON A/K/A DONALD R. ROBINSON**      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/17/2023 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT THOMAS RICH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/21/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. A Pearl River County Circuit Court jury found Donald Robinson guilty of sexual battery pursuant to Mississippi Code Annotated section 97-3-95(1)(a) (Rev. 2020). The trial court sentenced Robinson to a term of seven years in the custody of the Mississippi Department of Corrections, with three years to serve, and four years of post-release supervision.

¶2. Robinson now appeals his conviction and sentence. Robinson's sole issue on appeal is that his trial counsel provided ineffective assistance. Finding no error, we affirm Robinson's conviction and sentence.

## FACTS

¶3.  In July 2020, Erika and Hank Wormser hosted a barbeque at their home in Picayune, Mississippi. Among those in attendance were Robinson, nineteen-year-old L.S.,[1] Jacob Temple, and L.S.'s aunt Jamie. Testimony from the trial reflects that the all the guests consumed alcohol during the party, including Robinson and L.S.

¶4.  The party continued into the evening, and the guests planned to stay overnight at the Wormsers' house. L.S. was the first guest to go to sleep. At approximately 11:00 p.m., L.S. entered the Wormsers' house and fell asleep on the living room couch. Other guests eventually came inside the house and fell asleep in different bedrooms, leaving Robinson, Temple, and Jamie outside. Jamie testified that approximately one hour after L.S. fell asleep, Robinson went inside the house.

¶5.  L.S. testified that she woke from her sleep and felt "pressure." L.S. quickly realized that Robinson's fingers were inside her vagina. L.S. testified that she felt scared, so she initially pretended like she was sleeping. When she eventually opened her eyes, L.S. saw Robinson crouched beside her. According to L.S., Robinson asked if she "wanted him to keep going." L.S. said no and pushed Robinson away. L.S. testified that Robinson pushed back against her as if "he was going to keep going." L.S. stated that after she pushed Robinson away again, he stopped. Robinson then lay down on the opposite side of the couch and pretended to be asleep.

¶6.  L.S. testified that a few minutes later, Jamie and Temple came inside the house. Jamie

---

[1] In the interest of the victim's privacy, we substitute initials for her name.

testified that when she came inside, she saw L.S. "sitting up on the couch and [Robinson] . . . laying on the couch." Jamie testified that L.S. "looked spooked," so she immediately asked L.S. what was wrong. L.S. responded that "[Robinson] is not asleep," and she told Jamie that Robinson "touched" her. When Jamie inquired further, L.S. "started crying" and told Jamie that "[Robinson's] hands were in her pants and his fingers were inside of her." L.S. then ran outside of the house, and Jamie followed. After L.S. "reiterated [to Jamie] what happened," Jamie angrily went inside the house, slapped Robinson awake, and asked him if he touched L.S. According to Jamie, Robinson appeared confused, but he eventually responded, "I don't know. Maybe." Jamie testified that Robinson "said something along the lines [of] he was drunk or something, he doesn't know. And then [he] proceed[ed] to act like he didn't know where he was at or what was going on."

¶7. Jamie then drove L.S. to the Picayune Police Department to report the sexual assault. Captain Rhonda Johnson of the Picayune Police Department testified at trial that as part of her investigation into the reported assault, she "spoke to every witness who was [at the barbeque] and willing to talk[,]" including L.S., Jamie, and Temple. Robinson was eventually charged with committing an act of sexual battery against L.S. in violation of Mississippi Code Annotated section 97-3-95(1)(a).

¶8. At Robinson's trial, the jury heard testimony from Captain Johnson, Jamie, L.S., Robinson, Erika Wormser, and Robinson's wife, Angela Robinson. L.S. testified about the details of Robinson sexually assaulting her. L.S. admitted that due to her alcohol consumption, she did not remember much of what happened immediately before falling

3

asleep; however, she testified that she did remember the events surrounding her sexual assault.

¶9.    Robinson testified in his defense.  Robinson admitted that on the night of the party, he became drunk to the point of stumbling.  However, Robinson denied placing his fingers in L.S.'s vagina.  Robinson admitted that when he awoke to Jamie hitting him, out of confusion, he responded, "I don't know what you are talking about, and I said, 'Who?'" Robinson denied ever having been accused of a sex crime or any sexual impropriety in the past, and he could not offer any reason why L.S. had accused him of this act.

¶10.    Despite being subpoenaed by the State to testify, Temple failed to appear at trial.  As a result, the trial court allowed the State to recall Captain Johnson so that she could testify as to what Temple told her during her investigation of L.S.'s sexual assault.  Captain Johnson testified that according to Temple, when Jamie asked Robinson whether he touched L.S., Robinson responded, "I don't remember. I'm drunk. I don't remember."  On cross-examination of Captain Johnson, Robinson's counsel played the recording of Johnson's full interview of Temple.

¶11.    The jury ultimately found Robinson guilty of sexual battery, and the trial court sentenced him as stated above.  After the denial of his posttrial motions, this appeal followed.

## STANDARD OF REVIEW

¶12.    "This Court reviews claims of ineffective assistance of counsel de novo." *Latham v. State*, 299 So. 3d 768, 772 (¶12) (Miss. 2020).  To prove ineffective assistance of counsel, Robinson must show that (1) his counsel's performance was deficient, and (2) this deficiency

4

prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As the defendant, Robinson "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶13. The supreme court has explained that "there is no constitutional right to errorless counsel." *Parker v. State*, 30 So. 3d 1222, 1233 (¶38) (Miss. 2010). A strong presumption exists that counsel's performance falls within the range of reasonable, professional assistance. *Strickland*, 466 U.S. at 689. "There is also a presumption that decisions made by defense counsel are strategic, and this Court will not second-guess counsel's decisions that fairly may be characterized as strategic." *McCray v. State*, 263 So. 3d 1021, 1027 (¶14) (Miss. Ct. App. 2018). To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Finally, we look at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial." *McCray*, 263 So. 3d at 1027 (¶14) (internal quotation marks omitted).

## DISCUSSION

¶14. As an initial matter, we recognize that "this Court typically preserves ineffective-assistance-of-counsel claims for post-conviction review." *Latham*, 299 So. 3d at 773 (¶16). "This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim [on direct appeal]." *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002). We

5

therefore review ineffective assistance of counsel claims on direct appeal when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016). This Court may also resolve "ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020).

¶15. In the case before us, the State does not stipulate that the record is adequate for this Court to review Robinson's ineffective-assistance claims. *See Forrest v. State*, 376 So. 3d 404, 412 (¶21) (Miss. Ct. App. 2023). After our review, we find that the record is inadequate to address the following claims Robinson raised on direct appeal: (1) his trial counsel was ineffective for failing to object to hearsay testimony from Captain Johnson, (2) his trial counsel was ineffective for failing to object to the unavailability of Jacob Temple, and (3) his trial counsel was ineffective for failing to request a limiting instruction for the jury to disregard Captain Johnson's testimony that Temple's statements made to her during her investigation were consistent with a telephone conversation with Temple a week prior to trial. We therefore dismiss Robinson's request for relief without prejudice to his discretion to present these specific claims in a motion for post-conviction collateral relief.

¶16. However, as to Robinson's claim that his trial counsel was ineffective for introducing a recording of Captain Johnson's telephone interview with Temple, we find that the record affirmatively shows that this claim is without merit. Therefore, we fully resolve this claim

6

on direct appeal.

¶17.	The transcript reflects that at trial, Robinson's counsel explained that he wanted to admit the recording in its entirety to prevent the State from "cherry-pick[ing]" parts of Temple's statements.	The trial court allowed the recording to be played for the jury; however, the trial court marked the recording into evidence for identification purposes only. On appeal, Robinson takes issue with the recording being played for the jury in its entirety because, during the interview, Temple commented to Captain Johnson that Robinson "has a history" of touching younger girls, and Temple alleged that Robinson had "touch[ed]" his niece when she was younger.

¶18.	"With respect to the overall performance of the attorney, counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004) (internal quotation marks omitted).	"[T]here is a strong presumption that counsel's action[s] were consistent with a chosen trial strategy and was within the wide range of reasonable professional assistance." *Lomas v. State*, 328 So. 3d 670, 692 (¶63) (Miss. Ct. App. 2021) (internal quotation mark omitted).	In the recording, Temple stated that when he asked Robinson if he touched L.S., Robinson replied that he was "drunk" and "[did not] know if [he] did or not." Robinson himself testified at trial that he became intoxicated on the evening in question and fell asleep, so he did not know if he "touched anybody."	It is possible that Robinson's trial counsel submitted the recording, which included testimony that Robinson was drunk on the

7

night of the party, as part of his trial strategy.

¶19. Even if this Court were to find that Robinson's trial counsel was deficient in requesting that the jury hear the entirety of Temple's interview, "the record reveals that deficiency did not prejudice the defendant. There is not 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Welch v. State*, 361 So. 3d 1278, 1282 (¶19) (Miss. 2023) (quoting *Harrell v. State*, 947 So. 2d 309, 313 (¶11) (Miss. 2007)). As stated, Robinson was charged with the sexual battery of L.S., who testified that she awoke from her sleep and discovered that Robinson had his fingers inside her vagina. The supreme court has held that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006). Jamie also testified that when she entered the house, she observed L.S. and Robinson on the same couch. Jamie testified L.S. "looked spooked" and that L.S. disclosed to Jamie that Robinson's hands were in her pants and that "his fingers were inside of her." Jamie testified that when she asked Robinson if he touched L.S., Robinson appeared confused but eventually responded, "I don't know. Maybe."

¶20. Considering the overwhelming evidence of Robinson's guilt, we find that Robinson cannot show that his trial counsel's alleged deficiency prejudiced his right to a fundamentally fair trial or that the outcome would have been different if the jury had not heard the entire recording of Temple's interview with Captain Johnson. *See Allen v. State*, 325 So. 3d 681, 687 (¶16) (Miss. Ct. App. 2021). We therefore find no merit to this claim.

## CONCLUSION

¶21.    After reviewing the record, we find no merit to Robinson's claim that his counsel was ineffective for introducing a recording of Captain Johnson's telephone interview with Temple. Robinson's remaining ineffective-assistance-of-counsel claims may be pursued in a properly filed motion for post-conviction collateral relief. We therefore affirm Robinson's conviction and sentence.

¶22.    **AFFIRMED.**

**WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. ST. PÉ, J., NOT PARTICIPATING.**