J-A24041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA RANDY PEREZ | : | |
| | : | |
| Appellant | : | No. 116 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 16, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003062-2020

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED: JANUARY 15, 2026**

Joshua Randy Perez appeals from the judgment of sentence entered after he was convicted of aggravated assault, assault of a law enforcement officer, conspiracy to commit possession with intent to deliver, and other crimes.[1]  He challenges the sufficiency of the evidence to sustain the above assault and conspiracy convictions, the discretionary aspects of his 80-to-160-year aggregate sentence, and the constitutionality of his mandatory sentences for assault of a law enforcement officer.  We affirm.

---

[1] 18 Pa.C.S. §§ 2702(a)(2) (aggravated assault, four counts), 2702.1(a)(1) (assault of a law enforcement officer, four counts), 35 P.S. § 780-113(a)(30) (possession with intent to deliver, cocaine), 18 Pa.C.S. §§ 903(a)(1) (conspiracy to commit possession with intent to deliver), 907(a) (possessing instruments of crime), 2705 (recklessly endangering another person, four counts), 35 P.S. § 780-113(a)(16) (possession of a controlled substance), and (a)(32) (possession of drug paraphernalia).

Just after 6:00 a.m. on August 21, 2020, law enforcement officers arrived at an address in Reading, Pennsylvania, occupied by Perez, Jose Rivera, and an older man to execute a search warrant. Ten officers proceeded up an external stairway to the second-floor entrance to the residential portion of the three-story building, while more officers remained on street level to guard the perimeter. The first officer repeatedly knocked on the door and loudly announced, "Police, search warrant!" After about a minute with no answer, the ten officers forcibly entered the door. They noticed surveillance equipment.

Inside the building, the officers continued to yell, "Police, search warrant!" while clearing different rooms. They detained the older occupant of the building without difficulty. Less than a minute after they entered the residence, four officers proceeded up a set of stairs, around a corner and through a door to a third-floor hallway. All four officers were still yelling, "Police, search warrant!" The hallway connected two bedrooms and a closet. From one of the bedrooms, Rivera tossed a bag of cocaine out the window.

From the other bedroom, officers first heard a metal-on-metal click-click sound. Seconds later, two gunshots. Then, another metal-on-metal sound. Seconds later, a third gunshot. Two officers were next to the bedroom door, another was by the other bedroom door, and a fourth was still ascending the stairs. The four officers returned to the second floor without bodily injury.

Perez exited through a bedroom window. He ran across the rooftops, disregarding commands to stop. Eventually, he got down to ground level and

was arrested. Police interviewed Perez at City Hall, where he admitted to the shooting but claimed he did not know the home intruders were police. Perez said that he slept with a gun following a recent incident in which his aunt's home was invaded and his cousin was shot. That night, Perez said, he had gone to sleep around 3:00 a.m. after drinking alcohol and taking three "bars" of Xanax. Perez explained that he woke up in a drunken stupor believing someone was breaking in, and the gun discharged accidentally.

Perez's bedroom contained a rifle with the magazine inserted wrong and a jammed handgun—neither firearm would fire in these conditions. Three casings by Perez's bed matched the handgun; the three shots corresponded with a bullet lodged in the door jamb and holes on either side of the closed door. The trajectories were consistent with shots being fired from the bed towards the wall with the door. The bedroom also contained a television and electronic equipment linked to the surveillance camera.

Both bedrooms contained cocaine and paraphernalia, and the hall closet contained a paper bag of additional drug paraphernalia. Rivera's fingerprints were on the items in Rivera's bedroom and the hallway, and Perez's were not. Likewise, only Perez's fingerprints were on the contraband in his bedroom. However, the paper bag contained plastic bags that were the same as the bag of cocaine Rivera had discarded and the bags of cocaine in Perez's bedroom.

Police charged Perez with aggravated assault, assault of a law enforcement officer, conspiracy to commit possession with intent to deliver, and other crimes as set forth above, as well as four counts of attempted

murder. The case proceeded to a jury trial on August 19, 20, and 21, 2024, with the evidence described above. The jury found Perez guilty of the assaultive, drug, and conspiracy charges and not guilty of attempted murder.

On December 16, 2024, Perez appeared for sentencing. The trial court read a pre-sentence investigation report as well as letters submitted in support of Perez. The court indicated its recollection of facts from trial, which defense counsel corrected, and the court agreed:

> THE COURT: . . . In preparation of today's sentencing the Court had reviewed the testimony of the trial. One of the things that was so disturbing or compelling, or I am not really sure what the word is in this case, was the black and white photo that was submitted during the jury trial. And going up the steps to this apartment are, I don't recall, 15, 18, 20 uniformed police officers that have shields, have bullet proof vests on, have head gear on and they are going up the steps looking at a surveillance camera. The opposite end of that surveillance camera is inside the home. It's inside the home. There is a surveillance camera there. I believe there was testimony -- my point is that during the trial it was "could he have heard those officers?" And what's so compelling, and what's so frightening is all of those officers going up, the testimony of them yelling, testimony of them yelling "search warrant, police," ramming the door down, coming up the steps, positioning themselves on either side of that narrow hallway, on either side of that hallway or of the door, and then the next thing that happens is two rounds are fired directly at one of the officers who I believe it was --
>
> [Defense counsel]: That's not the facts.
>
> THE COURT: Well, it was, because --
>
> [Defense counsel]: Not true.
>
> THE COURT: Well, the gun was fired and the bullet went towards the door frame.
>
> [Defense counsel]: On an angle from the bed not in the door but on the wall, not at the door. Did not hit the door.

THE COURT: Did not hit the door. The entrance of the bullet was to the one side of the casing of the door into the drywall in the direction of the door.

[Defense counsel]: At an angle into the wall, which is where the bullet hit.

THE COURT: Correct, on either side of that door -- there is an officer on either side of that door. One goes up on the right. One goes up on the left. One is knocking on the door. Two shots go off, the gun jams and then a third shot goes off, and the officers have retreated and then the defendant jumped out the window and is running across rooftops while the police are yelling at him to come down.

There is just no . . . question in my mind that he knew that they were police officers. And to see that, to see that photograph of those officers going up that stair case is just so -- it just speaks volumes. I can't even put into words how intense that photograph is.

[Defense counsel]: What photograph are we talking about?

THE COURT: We're talking about -- there is a photograph that was captured of the law enforcement officers making their way up the stairs and they are all -- it's right before the entry.

[Prosecutor]: Yes. It's a still frame from the surveillance video, correct.

THE COURT: Correct. It was a still frame from the surveillance video that was entered.

[Defense counsel]: Outside.

THE COURT: It was introduced during trial.

[Defense counsel]: That was outside?

THE COURT: Correct.

[Defense counsel]: Right, but he was inside then and that footage was outside.

THE COURT: Correct.

N.T., 12/16/24, at 14–17 (quotation marks added).

This is the referenced image, which was properly introduced at trial:



N.T., 8/19/24–8/21/24, Exhibit C-1, slide 58.

Counsel also corrected the trial court about the firearm that Perez used for the three gunshots:

> THE COURT: . . . So we have four officers who are at the top of those stairs and three gunshots that go off. Two out of one gun and one out of the other.
>
> [Defense counsel]: It was just one gun, . . . Judge. I don't know what you're talking about.
>
> [Prosecutor]: I do believe --
>
> THE COURT: Then I misspoke.

[Prosecutor]: It's likely that all three shots came from the semi-automatic [handgun].

[Defense counsel]: It's not likely, it's a fact. It's a proven fact.

THE COURT: All right. Then I misspoke. So it's three shots, regardless, out of one gun. The [handgun] jams and then there is the [rifle] that's found on the side of the bed.

N.T., 12/16/24, at 17–18.

The trial court imposed mandatory 20-to-40-year sentences for each of Perez's convictions for assault of a law enforcement officer, directing that they run consecutively, for an aggregate term of 80 to 160 years of imprisonment, with credit for 1580 days of time served.

Perez filed a post-sentence motion to reconsider his sentence. In his motion, Perez averred that his "absurd" sentence "was an extraordinary abuse of discretion," "was cruel, vindictive, and excessive," was a *de facto* life sentence that was "beyond draconian" for "an individual [who] has had no significant conviction for 16 years and hurt nobody in the instant matter," and "is simply unconscionable and shocking to any fair and reasonable person." Motion, 1/9/25. Perez did not claim that his sentence violated Pennsylvania's constitutional prohibition on cruel and unusual punishment.

The trial court denied Perez's post-sentence motion, and Perez timely appealed. Perez and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Perez presents four issues for review:

I. Was the evidence insufficient to sustain [Perez's] convictions for Aggravated Assault and Assault of a Law Enforcement Officer where the Commonwealth failed to

- 7 -

prove specific intent to cause bodily injury and failed to prove that [Perez] knew the individuals involved were law enforcement officers?

II.    Was the evidence insufficient to sustain [Perez's] conviction for Conspiracy to Commit Possession with Intent to Deliver a Controlled Substance where no agreement or shared criminal intent was proven?

III.   Whether the Honorable Trial Court erred and abused its discretion by imposing consecutive mandatory minimum sentences totaling 80 to 160 years, resulting in a *de facto* life sentence that is manifestly excessive, unconstitutional, and based on factual inaccuracies?

IV.    Whether the Honorable Trial Court erred in sentencing [Perez] under 42 Pa.C.S.A. § 9719.1 where the statute is facially and as-applied unconstitutional, thereby violating [Perez's] due process rights under the Pennsylvania and United States Constitutions?

Perez's Brief at 5–6.

Perez's first issue challenges his four convictions each of assault of a law enforcement officer and aggravated assault.  He contends that the evidence was insufficient to prove that he intended to cause bodily injury (for assault of a law enforcement officer) or serious bodily injury (for aggravated assault), that he knew the people behind the door were law enforcement officers, and that two of the four officers were at risk.

For a challenge to the sufficiency of the evidence to sustain a conviction, a reviewing court analyzes whether a reasonable jury could find the challenged elements of the offense from the evidence at trial:

> [W]e must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt.  The facts and circumstances established by the

Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Brockington*, 230 A.3d 1209, 1212–13 (Pa. Super. 2020) (quoting *Commonwealth v. Hill*, 210 A.3d 1104, 1112 (Pa. Super. 2019)).

Our legislature has defined assault of a law enforcement officer, as applied here:

A person commits a felony of the first degree who attempts to cause . . . bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm.

18 Pa.C.S. § 2702.1(a)(1). There are four statutory elements for this offense committed as an attempt:

(1) the defendant attempted to cause . . . bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause . . . such bodily injury, the defendant discharged a firearm.

*Commonwealth v. Landis*, 48 A.3d 432, 445 (Pa. Super. 2012) (*en banc*) (citation omitted). The first element "requires a showing of some act, albeit not one actually causing bodily injury, accompanied by an intent to inflict bodily injury upon a law enforcement officer by discharging a firearm." *Id.* at 446 (citing the statutory definition of criminal attempt, 18 Pa.C.S. § 901(a)).

"Bodily injury" means "Impairment of physical condition or substantial pain."

18 Pa.C.S. § 2301 (definitions).

> Aggravated assault, as applied here, is defined:
>
> A person is guilty of aggravated assault if he: . . . attempts to cause . . . serious bodily injury to [a police officer] while in the performance of duty.

18 Pa.C.S. § 2702(a)(2). The elements of the offense "are (1) an attempt to cause . . . serious bodily injury; (2) to a police officer; (3) in the performance of his duty." *Commonwealth v. Johnson*, 874 A.2d 66, 71 (Pa. Super. 2005). The first element "requires a showing of a substantial step toward causing serious bodily injury to another, accompanied by an intent to inflict serious bodily injury." *Commonwealth v. Jackson*, 955 A.2d 441, 446 (Pa. Super. 2008) (citing *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006)). "Serious bodily injury" is "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

The Commonwealth may prove a defendant's intent to cause serious bodily injury by direct or circumstantial evidence. *Matthew*, 909 A.2d at 1257 (citing *Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003)). To determine whether a defendant possessed this intent, courts analyze the totality of the circumstances, including this "incomplete" list of factors:

> a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or

other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury.

*Id.* (citing the standard created in ***Commonwealth v. Alexander***, 383 A.2d 887, 889–90 (Pa. 1978)).

Perez compares the facts of ***Jackson***, in which the appellant shot at a man who was near at least seven other people. 955 A.2d at 442–43. On review, this Court rejected the Commonwealth's position that "firing a shot towards another is by itself sufficient evidence" that the appellant intended to injure anyone other than his intended victim. *Id.* at 447. Analyzing the totality of the circumstances, including the appellant's admission that he intended to shoot only the man, we found no other facts to prove his specific intent to injure the other people. *Id.* at 448. However, we affirmed the appellant's seven convictions for aggravated assault under the doctrine of transferred intent: because the appellant intended to injure the man and shot "in the direction of" the other people, the intent element was satisfied for the remaining victims. *Id.* at 449–50 (quoting ***Commonwealth v. Thompson***, 739 A.2d 1023, 1029 (Pa. 1999), to apply 18 Pa.C.S. § 303(b)[2] despite the lack of injury).

---

[2]    Divergence between result designed or contemplated and actual result.--When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

*(Footnote Continued Next Page)*

- 11 -

Here, the evidence was sufficient to prove the challenged elements of Perez's convictions for assault of a law enforcement officer and aggravated assault. First, the jury could reasonably find that Perez intended to cause serious bodily injury because he fired two shots towards the door, adjusted the handgun to fix a jam, and then fired a third shot before the handgun stopped working. This sequence supports the inference that Perez intended to injure the people on the other side of the door, rather than Perez's defense that the gun accidentally discharged when he was awakened. The trajectory of the bullets—from a low position near Perez's bed to points on either side of the doorway and on the frame—is consistent with an intent that the bullets would pass through the door and the wall to the other side. Likewise, Perez's subsequent flight reflects only that his intent changed when the handgun and the rifle would not fire. If, as Perez claimed in his interview, he thought the people in the hall were home invaders, this would support, not negate, his intent to cause them injury, in a defense of justification. From the totality of

_____

> (1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or
>
> (2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S. § 303(b).

the circumstances, the jury could find Perez possessed the requisite intent for the assault offenses when he fired the handgun.

Second, the evidence supports that Perez knew the people behind the door were law enforcement officers. Regardless of Perez's ability to view the security system, the officers testified that they loudly yelled, "police, search warrant!" as they moved throughout the building and approached Perez's room. Perez claimed that he woke up in an intoxicated stupor; it would be reasonable to infer that the repeated sound of "police!" is what woke him up. From this, the jury could find that Perez knew the people at whom he was shooting were law enforcement officers.

Third, we reject Perez's argument that the positions of the officer who was farther down the hall and the officer who was ascending the stairs took them out of the zone of danger of Perez's shots, such that the evidence would be insufficient to sustain Perez's convictions. Neither assault of a law enforcement officer nor aggravated assault, charged as attempts, includes an element that the victims were in actual danger. Perez's first issue fails.

Perez's second issue challenges the sufficiency of the evidence to sustain his conviction for conspiracy to commit possession with intent to deliver. He argues there was no evidence that he formed an agreement with Rivera to distribute cocaine.

A conviction for possession with intent to deliver requires proof "that the defendant possessed a controlled substance with the intent to deliver it." *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005) (citing

*Commonwealth v. Kirkland*, 831 A.2d 607, 711 (Pa. Super. 2003)).  The elements of a conspiracy are "that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy."  *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025 (Pa. Super. 2002)).  An agreement may be shown by circumstantial evidence.  *Id.*

Here, Perez's room and Rivera's room both contained controlled substances and paraphernalia; so did the hallway.  Notably, the paper bag in the hall contained plastic bags that matched both the cocaine that Rivera threw out of the window and packaging in Perez's room.  Despite Perez's fingerprints not being on the items in the common area, the shared packing material and residence supports the reasonable finding that Perez and Rivera had formed an agreement to possess cocaine with intent to deliver.  Perez's second issue fails.

Perez's third issue challenges the discretionary aspects of his sentence, specifically the trial court's order that his four mandatory 20-to-40-year sentences for assault of a law enforcement officer run consecutively.  Perez argues that the trial court relied upon incorrect factual assertions to justify the imposition of consecutive sentences, namely that "two rounds are fired directly at one of the officers," that there were "two [shots] out of one gun and one out of the other," and the inference that Perez saw the surveillance image of the officers climbing the outside staircase.  Although Perez

acknowledges that his sentences do not merge under the law, he maintains that his consecutive sentences for the same conduct are unduly harsh and unreasonable. Also in his third issue, Perez claims that his consecutive sentences violate the Pennsylvania (and Federal) constitutional prohibitions on cruel and unusual punishment, and were therefore an abuse of the trial court's discretion.

We begin our analysis of a discretionary sentencing claim by determining whether the appellant properly invoked our jurisdiction under subsection 9781(b) of the Sentencing Code. The appellant must (1) file a timely notice of appeal, (2) preserve his issue at sentencing or in a post-sentence motion, (3) include in his brief a statement of the reasons relied upon for allowance of appeal with respect to his claim, *see* Pa.R.A.P. 2119(f), and (4) present a substantial question that the sentence is not appropriate under the Sentencing Code. ***Commonwealth v. Reid***, 323 A.3d 26, 29 (Pa. Super. 2024) (citing ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Perez filed a timely appeal. At sentencing, he voiced his objections to the trial court's factual recitation, and he filed a post-sentence motion challenging the length of his aggregate sentence. His brief includes a Rule 2119(f) statement that based on consecutive sentences, his "aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." Perez's Brief at 25–26 (quoting ***Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa. Super. 2012)). The first portion of Perez's

claim presents a substantial question.  *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) ("[A] claim that the trial court relied upon incorrect factual assertions when imposing sentence asserts a 'substantial question.'").  Thus, Perez properly invoked our jurisdiction to consider the merits of part of his sentencing claim.

Perez's claim that the trial court based its sentence on improper facts, although preserved, fails on the merits.  Because defense counsel readily corrected the court as to every factual assertion—and the court accepted the corrections—the court did not base its sentencing determination on incorrect assertions.  When the trial court stated that "two rounds are fired directly at one of the officers," Perez's attorney advocated consistent with the trajectories of the gunshots.  The trial court repeated this in apparent acceptance.  When the trial court stated that Perez had also fired the rifle, both lawyers noted that the evidence showed that Perez shot only the handgun.  The trial court acknowledged, "I misspoke."  And the trial court's reference to the still image from the video concerns evidence that was properly admitted at trial.  The trial court stated that Perez's view—that the footage was from outside, and Perez was inside—was correct.  Because the trial court accepted all of Perez's corrections to its recitation of facts, we cannot find that the initial misstatements caused the court to abuse its discretion.

As to the second portion of Perez's discretionary sentencing issue, Perez did not preserve his "cruel and unusual" argument either at sentencing or in a post-sentence motion.  Furthermore, he did not include this constitutional

claim in his Rule 2119(f) statement of reasons relied upon for appeal of his discretionary sentencing issue. "[I]ssues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal." *Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017) (quoting *Commonwealth v. Santiago*, 980 A.2d 659, 666 (Pa. Super. 2009)). Because Perez did not alert the trial court to his cruel-and-unusual-punishment claim, he has waived this portion of his challenge to the discretionary aspects of his sentence. Perez's third issue fails.

Perez's fourth issue challenges the constitutionality of the mandatory minimum sentence for assault of a law enforcement officer. By statute, a court has "no authority to impose" anything less than 20 years for a person convicted of this crime. 42 Pa.C.S. § 9719.1(a), (b).[3] Perez argues that subsection 9719.1(a) facially violates fundamental due process rights because it does not require the Commonwealth to provide any notice that it intends to seek a mandatory minimum. He contends that this deprives an accused defendant of the ability to make informed decisions about how to proceed. *Cf. Commonwealth v. Boyles*, 606 A.2d 1201 (Pa. Super. 1992) (holding, under due process considerations, that notice of the Commonwealth's

---

[3] Likewise, the maximum term of imprisonment is not more than 40 years. 18 Pa.C.S. § 2702.1(b). The effect of these two provisions is that a person convicted of assault of a law enforcement officer, subsection 2702.1(a)(1), receives a mandatory sentence of exactly 20 to 40 years of imprisonment. *See* 42 Pa.C.S. § 9756(b)(1) (providing that a minimum sentence of total confinement "shall not exceed one-half of the maximum sentence imposed.").

intention to pursue a mandatory minimum sentence is required before a court accepts a guilty plea). As applied, Perez states that he exercised his right to a jury trial without notice, and that if he had had notice of the mandatory sentence, he could have rationally accepted a plea for less than the mandatory minimum.

Perez's constitutional challenge presents a question of law, for which we apply a *de novo* standard of review and a plenary scope of review. ***Commonwealth v. Torsilieri***, 232 A.3d 567, 575 (Pa. 2020) (citing ***Commonwealth v. Muniz***, 164 A.3d 1189, 1195 (Pa. 2017)). To succeed on a challenge to the constitutionality of a statute, a litigant "must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution." ***Id.*** (quoting ***In re J.B.***, 107 A.3d 1, 14 (Pa. 2014)).

A sentencing provision violates due process if it "fails to provide offenders with fair notice of the consequences for a particular crime." ***Commonwealth v. Eid***, 249 A.3d 1030, 1041 (Pa. 2021) (citing ***Johnson v. United States***, 576 U.S. 591, 595–96 (2015)). Here, the challenged statute "simply describes the legislatively-required sentence for an offender convicted of assaulting a law enforcement officer." ***Commonwealth v. Reid***, 117 A.3d 777, 786 (Pa. 2015). The statute provides that a sentencing court has no authority to impose a lesser sentence. 42 Pa.C.S. § 9719.1(b). The law is thus clear that a person charged with violating subsection 2702.1(a)(1) faces a mandatory 20-to-40-year sentence if convicted. Perez has not persuaded

us that the statute violates due process by not requiring the Commonwealth to give additional notice of the mandatory minimum sentence beyond the plain language of the statute. We reject Perez's facial challenge.

Furthermore, we find no due process violation as applied to Perez's case. As above, the law is clear that a conviction under subsection 2702.1(a)(1) will result in a mandatory sentence. Perez's citation to **Boyles** is inapplicable, as the actual notice we required there was "necessary only before *acceptance of a guilty plea*." **Boyles**, 606 A.2d at 1206. Perez has not persuaded us that his apparent lack of notice of the existence of subsection 9719.1(a) violated his due process rights as applied. Perez's fourth issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026